# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEWTON COVENANT CHURCH, formerly known as Newton Presbyterian Church, Garrett Smith, Carmen Aldinger, Anders Brownworth, Thomas Devol, Harold Jones, Doris Kellom, Kristen Lucken, Roger Mark, Roselind Picard, Daniel Romaine, and Beatrice Yankey, | CIVIL ACTION NO. _____ |
| Plaintiffs, | |
| v. | |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

## COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES; DEMAND FOR JURY TRIAL

Plaintiffs Newton Covenant Church ("NCC") and the individual Plaintiffs Garrett Smith, Carmen Aldinger, Anders Brownworth, Thomas Devol, Harold Jones, Doris Kellom, Kristen Lucken, Roger Mark, Roselind Picard, Daniel Romaine, and Beatrice Yankey ("Individual Plaintiffs") (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their complaint against Defendant Great American Insurance Company ("Defendant" or "Great American"), allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action against Great American seeking damages for breach of contract due to Great American's failure to defend and indemnify Plaintiffs for expenditures incurred with respect to an underlying lawsuit.

1

2.      Great American sold Plaintiffs a non-profit Directors and Officers ("D&O") insurance policy which provides $1 million in insurance coverage for claims made during the policy period of January 25, 2017 to January 25, 2018 (the "Policy").  During that policy period, Newton Presbyterian Church and the Presbytery of Boston (collectively, "POB") filed a complaint against Plaintiffs alleging that Plaintiffs engaged in a series of improper and unauthorized actions, trespasses and conversions of money and other assets, and seeking a declaratory judgment and damages for these, and other, alleged wrongful acts relating to a dispute over the ownership and occupancy of a property located at 75 Vernon Street, Newton, Massachusetts ("Underlying Action").

3.      Plaintiffs tendered the Underlying Action for coverage under the Policy, but Great American refused to defend and indemnify Plaintiffs.

4.      Plaintiffs bring this action for breach of contract arising out Great American's failure to defend and indemnify Plaintiffs in connection with the Underlying Action, as required under the Policy.

## PARTIES

5.      NCC is a non-profit religious organization formed under Massachusetts law and is based at 959 Watertown Street, West Newton, Massachusetts 02465.  NCC has been in existence continuously since 1898 as a duly incorporated legal entity.  The Individual Plaintiffs are each residents of Massachusetts.

6.      Upon information and belief, Defendant is organized under the laws of Ohio, with its principal places of business in Cincinnati, Ohio.  Upon information and belief, Defendant is an insurance company engaged in trade and commerce, including the business of insurance, in the Commonwealth of Massachusetts; and it issued the policy of insurance at issue in this case to Massachusetts insureds covering a Massachusetts risk.

## JURISDICTION & VENUE

7.     This Court has jurisdiction over these parties and this action pursuant to 28 U.S.C.

§ 1332 because Plaintiffs and Defendant are citizens of different states and the matter in

controversy exceeds $75,000, exclusive of interest and costs.

8.     The District of Massachusetts is the appropriate venue for this action pursuant to

28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims in

this case occurred in this judicial district.

9.     Defendant is subject to personal jurisdiction in this district because, based upon

information and belief, Defendant:  (a) issued insurance policies in Massachusetts, including the

policy at issue in this action; (b) is licensed and/or authorized to do businesss in Massachusetts;

and (c) has, within the relevant time periods, done or transacted business in Massachusetts.

## FACTS
## The Great American Policy

10.    Great American sold Plaintiffs a non-profit D&O insurance policy, No.

EPP1116413, which provides, among other protections, $1 million in D&O coverage, subject to a

$1,000 retention, for claims made during the policy period of January 25, 2017 to January 25, 2018

(the "Policy") (attached as Exhibit 1).

11.    Specifically, with respect to **Claims** first made during the policy period, Great

American must pay, among other things:

> A.  **Loss** and **Costs of Defense** from any **Claim** made against any **Insured Person**,
>
>     or
>
> B.  Any **Claim** made against the **Organization**, for any **Wrongful Act.**

*Id.*  Policy at Insuring Agreement, Coverages A and C, at p. 1.

12. The Policy defines "**Claim**" to include a civil proceeding for monetary or non-monetary (including injunctive) relief commenced by service of a complaint or similar pleading. *Id.* at Section III. A. (2).

13. The Policy defines "**Insured**" to include, *inter alia*, the "Organization" (defined in the Policy to include "the entitety named in Item 1 of the Declarations"). *Id.* at Section III. G.

14. The Policy further defines "**Insured**" also to include, *inter alia*, "**Insured Persons.**" *Id.* "**Insured Persons**" are defined in the polcy to includes "all persons who were, now are, or shall be directors, trustees, officers, agents, governors, members of the Board of Managers, employees . . . of the **Organization**, or any **Subsidiary**, including any executive board members and committee members whether salaried or not." *Id.* at Section III. H.

15. At the time of policy issuance, as well as at the time of the filing of the underlying complaint, each of the Individual Plaintiffs was an an officer and/or director of the **Organization** within the meaning of the Policy.

16. **Loss** includes, among other things, judgments, settlements, pre-judgment and post-judgment interest and **Costs of Defense**. *Id.* at Section III. I.

17. **Costs of Defense**, in turn, are defined as "the reasonable and necessary legal fees, costs and expenses incurred in the investigation or defense of any **Claim**." *Id.* at Section III. C.

18. **Wrongful Act** means an "actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty." *Id.* at Section III. R.

19. It is Great American's duty to defend any **Claim** made against NCC "even if the allegations of such **Claim** are groundless, false or fraudulent." *Id.* at Section I.

20. Coverage under the Policy is subject to several exclusions. None of the Policy exclusions applies to Great American's duty to defend or indemnify Plaintiffs.

## History of NCC

21.     NCC currently maintains its business of worship and ministry at Bigelow Middle School, Newton, Massachusetts, with regular visitors from the community attending weekly.

22.     Presbytery of Boston is a regional administrative unit and representative body of the Presbyterian denomination known as the Presbyterian Church (U.S.A.) (hereinafter, "PC(USA)"), a Presbyterian denomination formed in 1983.

23.     PC(USA) is a denomination of affiliated Presbyterian Churches (one of many Presbyterian denominations in the United States).

24.     NCC has been affiliated with several Presbyterian denominations throughout its history, including PC(USA), with which it became affiliated in 1983.

25.     NCC voted to withdraw from the PC(USA) in order to affiliate with a different protestant denomination, the Evangelical Covenant Church ("ECC").

## NCC's Claim to the Property

26.     NCC has an ownership interest in various personal properties including, but not limited to, bank accounts and investment accounts held in the name of NCC or one or more of its predecessor names, as well as in donations received by NCC (hereinafter, the "Personal Property").

27.     NCC had and held title to a parcel of land and the buildings and structures thereon known as 75 Vernon Street, Newton, Middlesex County, Massachusetts (hereinafter referred to as the "Real Property").

28.     The buildings/structures located on the Real Property include and/or contain the church's sanctuary building, classrooms, and a preschool, which is open to the public.

29.     NCC withdrew its affiliation with PC(USA) by a vote of the corporation (the "Vote") on January 15, 2017.

30.     The membership of NCC voted on January 15, 2017 to seek admission into the ECC.

31.     The membership of NCC voted on January 15, 2017 to utilize NCC's property in accordance with the wishes of the majority of the membership.

### The Underlying Action

32.     This dispute arose in connection with the 2017 Vote, when 80% of NCC's members voted in accordance with NCC's corporate by-laws to disassociate with PC(USA).  In response and retaliation, PC(USA)'s regional presbytery, The Presbytery of Boston, announced that it was the beneficial owner of NCC's real and personal property; declared that it had the absolute right to determine membership in and ownership of NCC; and accused NCC's members of trespass.

33.     On March 17, 2017, the Presbytery of Boston and and its affiliate, an organization recently identified as Newton Presbyterian Church, filed a complaint in the Business Litigation Session of Suffolk County Superior Court, Case No. 17-0804, asserting the following claims against Plaintiffs:  (i) Declaratory Judgment, seeking a ruling that the underlying plaintiffs owned the contested property; (ii) Trespass, asserting that Plaintiffs wrongfully and unlawfully occupied and used the contested property; (iii) and Conversion, seeking monies and other assets associated with the contested property.

34.     In response to the initiation of the Underlying Action, Plaintiffs retained legal counsel to assist in the defense of the Underlying Action.

35.     On November 16, 2017, the trial court in the Underlying Action granted partial summary judgment in favor of the underlying plaintiffs (the "SJ Order"), an order that Plaintiffs (who were the underlying defendants) believed to be in error.  In Janaury 2018, the trial court issued an order denying Plaintiffs' motion to vacate the SJ Order. Plaintiffs (underlying defendants) similarly believed that this order was in error.  By way of their motion to vacate,

Plaintiffs (underlying defendants) submitted further evidence and additional legal authority establishing that NCC never agreed or intended to subordinate itself to PC(USA) or to create a trust for the benefit of PC(USA) – and that, at a minimum, there are disputed facts regarding those critical issues.

36.     Relying on the interlocutory SJ Order, on February 12, 2018, the trial court issued an order granting the underlying plaintiffs' motion for preliminary injunction. Plaintiffs (underlying defendants) believed that this order was in error.  The effect of this order was the displacement of an entire congregation from the church home it has owned and maintained for nearly 75 years (such property having a value of approximately $6.9 million), and giving the underlying plaintiffs immediate access to the $1 million in funds donated by NCC's members.  On February 16, 2018, after allowing the instant Plaintiffs' emergency motion for the entry of separate and final judgment, the trial court entered the Judgment.

37.     On February 26, 2018, Plaintiffs (underlying defendants) filed a timely Notice of Appeal with the Commonwealth of Massachusetts Appeals Court, and on March 1, 2018, filed a Motion to Stay Judgment Pending Appeal.

38.     While the appeal of the Underlying Action was pending, Plaintiffs (underlying defendants) and underying plaintiffs settled their dispute, which included the dismissal of all appeals and other pending litigation as between the parties.

## Plaintiffs' Insurance Claim

39.     By letter dated April 5, 2017, over seven months prior to the trial court's summary judgment rulings, Plaintiffs submitted a notice of claim to Great American, requesting an immediate defense under the Policy.

40.     As of April 5, 2017, plaintiffs in the Underlying Action had asserted a **Claim**, as defined under the Policy, against both the **Organization** and **Insured Persons**.  As of that date

through November 16, 2017, there was no ruling by the court in the Underlying Action as to which party was entitled to the contested property.  Likewise, as of April 5, 2017 and continuing to this date, there has been no ruling by the court in the Underlying Action as to which party in that action is a proper insured under the Policy and/or has rights to assert a claim under the Policy as an insured.

41.     Because the Policy covered the Underlying Action, or at least potentially covered some or all of the allegations and claims asserted in the Underlying Action, Great American was obligated under the Policy and under Massachusetts law to immediately defend Plaintiffs.

42.     By letter dated April 26, 2017, Great American refused to defend and also disclaimed any obligation to indemnify for any future judgment or settlement.

43.     Great American took this position – and refused to reconsider it despite numerous entreaties from Plaintiffs – even though the allegations of the Underlying Action clearly asserted wrongful acts that were potentially covered under the Policy, even though Plaintiffs plainly qualified as **Insureds** under the Policy, and even though no court has ruled on the issue of Plaintiffs' status as **Insureds** under the Policy.

44.     As a direct and proximate result of Great American's failure to defend, Plaintiffs were forced to incur substantial attorneys' fees and costs.  They also were forced to settle the Underlying Action – and to dismiss what they believed to be a meritorious appeal – because they could not afford ongoing defense costs and could not risk a potentially ruinous damages judgment.

45.     By refusing to defend Plaintiffs and by taking actions in bad faith, Great Amercian "knowing[ly] or willful[ly]" violated Massachusetts Unfair Trade Practices Act, Mass. Gen. L. c. 93A, §§ 2 and 9 ("Chapter 93A") as well as Mass. Gen. L. c. 176D, §§ 3(9)(d), (f), and (n).  As a direct and proximate result of Great American's violation of Chapter 93A and failure to pay some

or all of the settlement, Plaintiffs have sustained substantial damages and other harm, including loss of property, loss of money, unreimbursed defense costs, interest and other damages.

46.     At all relevant times and respects, Great American has been engaged in trade or commerce for profit within the Commonwealth of Massachusetts through the business of selling policies of insurance and handling claims brought under such policies of insurance.

47.     The unfair and deceptive trade practices, and/or the resulting harmful effects of such conduct, occurred principally and substantially in Massachusetts pursuant to a policy of insurance on risks located exclusively within Massachusetts and relating to an underlying lawsuit pending in Massachusetts.

48.     Great American's refusal to defend Plaintiffs has resulted in Plaintiffs' incurring substantial hardship and financial loss, including having to pay substantial attorneys' fees to defend the Underlying Action and ultimately having to abandon its appeal of the SJ Order in the Underlying Action because of their financial inability to pursue their appeal.

49.     The insurance practice statutes in Massachusetts, including under Mass. Gen. L. c. 93A, §§ 2 and 9, and c. 176D, § 3(9)(d), (f), and (n), impose certain obligations on Great American, including (without limitation) the obligations to promptly and fairly investigate claims for coverage, to promptly provide coverage that is reasonably clear, to base its claims decisions on information known to it and to fairly reconsider its decisions based on newly learned information, and in general to act fairly or non-deceptively.

50.     By virtue of its conduct as set forth in this Complaint and subject to its ongoing investigation, Plaintiffs believe Great American has breached the foregoing statutory standards and obligations.

51.     The foregoing breaches by Great American have been willful.

52.     Pursuant and subject to its ongoing investigation, Plaintiffs intend to serve a 30-day demand letter under Chapter 93A, § 9, setting forth in detail how Great Amerian breached its contractual obligations and implied duties of good faith and fair dealing, and will seek to amend its Complaint to add a Chapter 93A, § 9 claim.

## FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT
### (Failure to Defend)

53.     Plaintiffs repeat and reallege the allegations of Paragraph 1 through 52 as if fully set forth herein.

54.     Plaintiffs have incurred substantial costs and expenses defending the Underlying Action.

55.     The Policy is a contract that obligates Great American to defend Plaintiffs if there is any possibility of coverage based on allegations of wrongdoing by underlying plaintiffs in the Underlying Action.

56.     Great American wrongfully refused to defend Plaintiffs.

57.     As a direct and proximate result of Great American's breach, Plaintiffs sustained damages for defense costs in connection with the Underlying Action in excess of $850,000, and they were also forced to abandon their appeal and settle on unfavorable terms in order to avoid ruinous ongoing defense costs as well as potentially ruinous damages.

## SECOND CLAIM FOR RELIEF FOR BREACH OF CONTRACT
### (Failure to Indemnify)

58.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 52 as if fully set forth herein.

59.     Plaintiffs incurred the cost of paying the settlement in the Underlying Action.

60.     The Policy is a contract that obligates Great American to pay some or all of the settlement entered into in the Underlying Action.

61.     In breach of the Policy, Great American refused to pay the settlement in the Underlying Action.

62.     As a direct and proximate result of Great American's breach and failure to pay some or all of the settlement, Plaintiffs have sustained damages that are covered under the Policy.

**REQUEST FOR RELIEF**

63.     WHEREFORE, Plaintiffs request, on the First Cause of Action, an award of money damages against Great American that fully compensates Plaintiffs for their defense costs incurred in defending the Underlying Action, as well as all attorneys' fees and costs incurred in establishing Great American's breach of the duty to defend and all consequential damages flowing from that breach, including the loss of money and property resulting from the settlement of the Underlying Action that Plaintiffs were forced under duress to accept.

64.     WHEREFORE, Plaintiffs request, on the Second Cause of Action, an award of money damages against Great American that fully compensates Plaintiffs for some or all of their damages, loss of property and costs incurred in paying the judgment in the Underlying Action.

65.     WHEREFORE, Plaintiffs also request, on both Causes of Action:

A.      An award for Plaintiffs' reasonable attorneys' fees, costs and disbursements incurred in prosecuting this action;

B.      An award for pre-judgment and post-judgment interest; and

C.      An award for such other, further and different relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial on all issues and counts so triable.

Respectfully submitted,


/s/ *Robert Gilbert*
Robert Gilbert (BBO# 565466)
LATHAM & WATKINS LLP
200 Clarendon Street – 27th Floor
Boston, MA 02116
Tel:  (617) 948-6000
Fax:  (617) 948-6001
robert.gilbert@lw.com

Brian Friel (*pro hac vice* forthcoming)
Kimberly Wehle (*pro hac vice* forthcoming)
MILLER FRIEL, PLLC
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC  20036
Tel:  (202) 760-3160
Fax:  (202) 459-9537
frielb@millerfriel.com
wehlek@millerfriel.com

*Attorneys for Plaintiffs*

Dated:  December 21, 2018