UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12628-RGS

NEWTON COVENANT CHURCH, et al.

v.

GREAT AMERICAN INSURANCE COMPANY

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS AND PLAINTIFFS'
PARTIAL MOTION FOR SUMMARY JUDGMENT

July 31, 2019

STEARNS, D.J.

Plaintiffs Newton Covenant Church (NCC), Garrett Smith, Carmen Aldinger, Anders Brownworth, Thomas Devol, Harold Jones, Doris Kellom, Kristen Lucken, Roger Mark, Roselind Picard, Daniel Romaine, and Beatrice Yankey brought this lawsuit against Great American Insurance Company (GAIC) for breach of contract.[1] Plaintiffs allege that GAIC, as their insurer, failed to defend and indemnify them in an underlying state court action. GAIC moves to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and for failure to join a necessary and indispensable party

---

[1] NCC is a Massachusetts nonprofit based in Massachusetts. The other plaintiffs are Massachusetts residents. GAIC is an Ohio company with a principal place of business in Ohio. Compl. (Dkt # 1) ¶¶ 5-6.

under Fed. R. Civ. P. 19. Plaintiffs oppose GAIC's motion to dismiss and move for partial summary judgment on Count I (failure to defend) under Fed. R. Civ. P. 56(a). For the reasons to be explained, GAIC's motion to dismiss for failure to state a claim will be allowed, while plaintiffs' motion will be denied.

## BACKGROUND

On January 15, 2017, 80% of the members of the Newton Presbyterian Church (NPC) voted to withdraw from the mother Presbyterian Church and to affiliate instead with the Evangelical Covenant Church. Compl. ¶¶ 25, 29, 32. On March 17, 2017, NPC and the Presbytery of Boston brought suit in Suffolk Superior Court against plaintiffs, seeking, among other things, a declaratory judgment that NPC is the owner of the church property at 75 Vernon Street in Newton, Massachusetts. *See* Pollack Decl. (Dkt # 9), Ex. B.[2]

---

[2] The court may consider the pleadings and orders from the underlying state court litigation, along with the insurance policy and business records from the Secretary of the Commonwealth, because they are public records or are referenced in the Complaint. *See Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) ("On a motion to dismiss, . . . a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'") (citations omitted). The court need not, as plaintiffs contend, convert GAIC's motion to dismiss into a motion for summary judgment. The court, therefore, denies plaintiffs' motion for partial summary judgment and treats it instead, as plaintiffs argue in the alternative, as an opposition to the motion to dismiss.

According to the state court complaint, plaintiffs unlawfully took control of the property after departing from the church because they disagreed with the mother church's decisions to allow lesbian, gay, bisexual, and transgender (LGBT) persons into the clergy and to recognize same-sex marriage. *Id.* ¶¶ 2, 8.

Six days later, on March 23, 2017, the breakaway majority submitted documentation to the Secretary of the Commonwealth changing the entity name of the Newton Presbyterian Church to the Newton Covenant Church. Friel Decl. (Dkt # 17), Ex. 3. On April 5, 2017, plaintiffs submitted a notice to GAIC requesting a defense under a $1 million Directors and Officers (D&O) insurance policy. The Policy, as described in greater detail below, names Newton Presbyterian Church as its insured and covers claims made between January 25, 2017 and January 25, 2018. *Id.*, Ex. 1. On April 26, 2017, GAIC refused to defend and disclaimed any obligation to indemnify a future judgment or settlement in the lawsuit.

On November 16, 2017, the Superior Court granted partial summary judgment, holding that plaintiffs were not members of NPC and that NPC was the true owner of the property. Pollack Decl., Ex. C. On March 30, 2018, the entity name was changed back to the Newton Presbyterian Church. Friel Decl., Ex. 3. On April 25, 2018, plaintiffs filed Articles of Organization with

the Secretary of the Commonwealth creating a new entity named Newton Covenant Church. Pollack Decl., Ex. H at 6-7. On June 14, 2018, the parties settled the dispute, agreeing to dismiss the action with prejudice and have the partial summary judgment order vacated. *Id.*, Ex. G.

On December 21, 2018, plaintiffs initiated this lawsuit, seeking reimbursement for defense costs incurred and indemnification for settlement payments made to NPC in the state court action. While plaintiffs allege that they are covered under the Policy, GAIC contends that they are not.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The court construes the words of an insurance policy "in their usual and ordinary sense," *Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co.*, 486 F.3d 727, 732 (1st Cir. 2007), "consider[ing] what an objectively reasonable insured, reading the relevant policy language, would expect to be covered,"

4

*Hazen Paper Co. v. United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). While "ambiguous words or provisions are to be resolved against the insurer," *City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford*, 446 Mass. 638, 640 (2006), "provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms," *High Voltage Eng'g Corp. v. Fed. Ins. Co.*, 981 F.2d 596, 600 (1st Cir. 1992), quoting *Stankus v. New York Life Ins. Co.*, 312 Mass. 366, 369 (1942).

"An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200 (2010). "[T]he obligation of the insurer to defend is based not only on the facts alleged in the complaint but also on the facts that are known or readily knowable by the insurer." *Desrosiers v. Royal Ins. Co. of America*, 393 Mass. 37, 40 (1984). "Once the insured makes an initial showing that the overall coverage provisions of the insurance policy apply, the burden 'shifts to the insurer to demonstrate that some exclusion defeats coverage.'" *Clark School for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.,* 734 F.3d 51, 55 n.1 (1st Cir. 2013), quoting *Vermont Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 41 (1st Cir. 2013).

Here, the Policy covers the "**Loss** and **Costs of Defense**" arising from a "**Claim**" made against the "**Organization**" or any "**Insured Persons**" for a "**Wrongful Act**." Pollack Decl., Ex. A § 1. Loss includes, among other things, "settlements, judgments, pre-judgment and post-judgment interest, front and back pay, [and] compensatory damages." *Id.* § III.I. Costs of defense refers to "reasonable and necessary legal fees, costs and expenses incurred in the investigation or defense of any **Claim**." *Id.* § III.C. A claim is, as relevant here, "a civil proceeding, including any appeals therefrom made against any **Insured** seeking monetary or non-monetary (including injunctive) relief commenced by service of a complaint or similar pleading." *Id.* § III.A. Insured includes both the organization, here NPC, and insured persons.[3] *Id.* § III.G. Finally, a wrongful act, in pertinent part, consists of claims made against insureds "acting in their capacity" with NPC, "solely by reason of their status" with NPC, or "arising out of their service" as, among other things, members, officers, or directors of NPC. *Id.* § III.R.

---

[3] Insured persons is defined as "persons who were, now are, or shall be directors, trustees, officers, regents, members of the Board of Managers, employees, leased employees, temporary or seasonal employees, interns, student teachers, substitute teachers, teaching assistances, volunteers or staff members of the **Organization** or any **Subsidiary**, including any executive board members and committee members whether salaried or not." Pollack Decl., Ex. A § III.H.

6

GAIC contends, and the court agrees, that the allegations in the state court complaint were not "reasonably susceptible" to making out a claim because the Policy clearly excluded the coverage sought by plaintiffs. First, NCC is not an insured under the Policy because it is a legal entity distinct from NPC. Plaintiffs' counterargument is that NCC was an insured under the Policy because when their claim was submitted to GAIC on April 5, 2017, NPC had already changed its name to NCC and was operating under NPC's corporate identification number (000005498).[4] Friel Decl., Ex. 3. However, according to the state court complaint, the vote in January of 2017 to split from the Presbyterian Church, as plaintiffs had been informed, was "unauthorized" because it violated the Church's constitution. Pollack Decl., Ex. B ¶¶ 5-6. The complaint further alleged that the Presbytery of Boston had determined that NPC members, and not the breakaway faction, constituted the true NPC. *Id.* ¶ 7.[5] Thus, based on the allegations in the

---

[4] But when the lawsuit was filed on March 17, 2017, the church was still named NPC; only six days later did the name change to NCC.

[5] The state court ultimately agreed. *See* Pollack Decl., Ex. C.

complaint, GAIC properly understood that *plaintiff* NPC was the insured organization under the Policy, not *defendant* NCC.[6]

Second, the individual plaintiffs are also not covered under the Policy because they were not sued in state court in their official capacities as officers or directors of NPC, but rather as trespassers on NPC property. The Policy covers "wrongful acts," but only when brought against insured persons "acting in their capacity" with NPC, "solely by reason of their status" with NPC, or "arising out of their service" as officers and directors of NPC. Pollack Decl., Ex. A § III.R. While the Complaint alleges that each plaintiff "was an an [sic] officer and/or director of the **Organization** within the meaning of the Policy," Compl. ¶ 15, it does not allege that plaintiffs were sued in their official capacity. Plaintiffs were, in fact, sued for trespass and conversion as *former* NPC members and *current* NCC leaders. NPC contended, and the Superior Court found, that plaintiffs were not members of the mother church and that NPC, not plaintiffs, was the owner of the property. Thus, although plaintiffs, as former members of NPC, may fit the definition of insured persons, the claims alleged in the state court complaint do not constitute wrongful acts covered under the Policy.

---

[6] Also, although NPC may have temporarily changed its name to NCC, the NCC here is a distinct corporation that was formed on April 25, 2018, after the state court litigation. Pollack Decl., Ex. H at 6-7.

Finally, even assuming plaintiffs were insureds under the Policy, the "insured versus insured" exclusion would preclude coverage. This exclusion provides that the

> Policy does not apply to any Claim made against any Insured . . . by, for the benefit of, or at the behest of the Organization or any Subsidiary or any entity which controls, is controlled by, or is under common control with the Organization or any Subsidiary, or any person or entity which succeeds to the interests of the Organization or any Subsidiary, provided, however, this exclusion shall not apply to any Claim brought by the receiver, conservator, liquidator, trustee, rehabilitator, examiner or similar official of the Organization, if any, in the event of Financial Insolvency.

Pollack Decl., Ex. A § IV.H. (emphasis omitted). Plaintiffs contend that the exclusion does not apply because the state court complaint was filed by the Presbytery of Boston and NPC "in name only" since NPC had changed its name to NCC. Pls.' Mem. (Dkt # 16) at 15. However, the complaint alleges that NPC and NCC were, at best, the same entity. If so, NPC would be asserting claims against itself and the other individual plaintiffs, which would trigger the exclusion because insureds would be on both sides of the litigation. GAIC, therefore, had another basis on which to deny coverage to plaintiffs. *See Strange v. Genesis Ins. Co.*, 536 F. Supp. 2d 71, 79 (D. Mass. 2008) ("[C]overage of Strange's defense costs for the Underlying Litigation is precluded by the insured versus insured exclusion."); *Stratton v. Nat'l Union Fire Ins. Co.*, 2004 WL 1950337, at *5 (D. Mass. Sept. 3, 2004)

("Because MHC is the successor to MPAN and MHG in the plain meaning of the term, the lawsuits between MHC and the plaintiffs fall within [the "insureds versus insureds" exclusion] of the policies and National Union has no duty to defend or provide coverage.").

In short, since plaintiffs were excluded from coverage under the Policy, GAIC had no duty to defend. *See Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 820 (2003) ("There is . . . no duty to defend a claim that is specifically excluded from coverage."). And absent a duty to defend (Count I), GAIC also had no duty to indemnify (Count II). *See Sanders v. Phoenix Ins. Co.*, 843 F.3d 37, 46 (1st Cir. 2016) ("[I]f an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify."), quoting *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 459 (1999).

**ORDER**

For the foregoing reasons, GAIC's motion to dismiss the Complaint for failure to state a claim is <u>ALLOWED</u>, while plaintiffs' motion for partial summary judgment on Count I is <u>DENIED</u>.[7]  The Clerk will enter judgment for GAIC and close the case.

                            SO ORDERED.

                            <u>/s/ Richard G. Stearns</u>
                            UNITED STATES DISTRICT JUDGE

---

[7] Having so concluded, the court need not reach (1) GAIC's additional argument that plaintiffs are barred by collateral estoppel from relitigating the state court judgment, or (2) GAIC's alternative motion to dismiss under Fed. R. Civ. P. 19 for failure to join NPC as a necessary and indispensable party.  Nor need the court consider the possible impact of the state court settlement agreement.